IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA

v.  Criminal Nos. 3:13CR221
 3:14CR66

BILLY GENE JEFFERSON, JR.,

Petitioner.

## MEMORANDUM OPINION

Billy Gene Jefferson, Jr., a federal inmate proceeding *pro se*, has submitted a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence in each of his criminal cases in this Court ("§ 2255 Motions"). Jefferson's § 2255 Motions and memoranda are identical and he has affixed both case numbers on all his filings. *See United States v. Jefferson*, No. 3:13CR221 (E.D. Va. filed Dec. 12, 2016), ECF Nos. 114–15 ("Jefferson I"); *United States v. Jefferson*, No. 3:14CR66 (E.D. Va. filed Dec. 12, 2016), ECF Nos. 48–49 ("Jefferson II"). The Government has responded to Jefferson's § 2255 Motions with two identical Responses. (Jefferson I, ECF No. 121; Jefferson II, ECF No. 59.) Jefferson has replied to the Government, again with two identical filings. (Jefferson I, ECF No. 125; Jefferson II, ECF No. 67.) Therefore, in the interests of juridical efficiency, the Court consolidates Jefferson's § 2255 Motions into one single Memorandum Opinion. For the reasons set forth below, the § 2255 Motions will be DENIED.

## I. PROCEDURAL HISTORY

### A. The Plea Agreements in Jefferson I

On December 9, 2013, Jefferson was named in a Criminal Information charging him with major fraud against the United States and engaging in unlawful monetary transactions

("December 9, 2013 Criminal Information"). (Jefferson I, ECF No. 1, at 4–10.) On December 19, 2013, Jefferson pled guilty to the two-count Criminal Information ("December 19, 2013 Plea Agreement"). (Jefferson I, ECF No. 10, at ¶ 1; *see also* Jefferson I, ECF No. 49.) Under the December 19, 2013 Plea Agreement, the Government agreed to recommend that Jefferson receive a three-point reduction for acceptance of responsibility under the applicable Sentencing Guidelines, and that "[t]his recommendation will remain in effect provided [Jefferson] does not do anything inconsistent with full acceptance of responsibility prior to sentencing." (Jefferson I, ECF No. 10, at ¶ 4.) The Government further agreed to recommend a sentence of no more than 78 months. (*Id.*) Jefferson agreed to pay $12,947,886.77 in restitution.[1] (*Id.* at ¶ 8.) The December 19, 2013 Plea Agreement further detailed that "restitution is mandatory. . . ." (*Id.*)

"To facilitate compliance with the restitution order, the district court permitted Jefferson to remain on bond pending sentencing, with the condition that he report any money transfers over $25,000 to the Internal Revenue Service." *United States v. Jefferson*, 612 F. App'x 676, 677 (4th Cir.), *opinion after grant of reh'g*, 621 F. App'x 757 (4th Cir. 2015). While on pre-sentencing release, Jefferson failed to report multiple money transfers over $100,000, withdrew substantial amounts of cash, and made dozens of monetary transfers just under the reporting threshold. (*See* Jefferson I, Sept. 9, 2013 Tr. 387–88, ECF No. 87.) Further, the Government learned that prior to the filing of the December 9, 2013 Criminal Information, and while the Government was investigating his case, Jefferson withdrew hundreds of thousands of dollars in cash, bought tens-of-thousands of dollars' worth of gift cards, created a false driver's license,

---

[1] By Order entered on December 8, 2014, Jefferson's restitution was reduced to $9,491,918.47. (Jefferson I, ECF No. 103.)

and chartered a plane to England.[2] (*See* Jefferson I, Sept. 9, 2013 Tr. 81–84, 104–21.) On April 11, 2014, the Government moved to hold Jefferson in breach of the December 19, 2013 Plea Agreement. (Jefferson I, ECF No. 27.) On April 28, 2014, Jefferson filed a cross-motion to hold the Government in breach of the December 19, 2013 Plea Agreement. (Jefferson I, ECF No. 34.) Thereafter, Jefferson and the Government entered into a Supplemental Plea Agreement wherein the parties agreed to withdraw their respective motions to hold each in breach of the December 19, 2013 Plea Agreement. (Jefferson I, ECF No. 49, at ¶ 15.) The Supplemental Plea Agreement also removed the Government's obligations to recommend that Jefferson receive a three-point reduction for acceptance of responsibility and to recommend a sentence of no more than 78 months. (*Id.* at ¶ 4.) The Supplemental Plea Agreement detailed that Jefferson "understands that the United States will argue at sentencing for an upward departure or variance . . . ." (*Id.*)

### B. The Plea Agreement in Jefferson II

Due to the Government's discovery of Jefferson's additional criminal conduct before the filing of the December 9, 2013 Criminal Information and after the December 19, 2013 Plea Agreement, on May 6, 2014, a grand jury indicted Jefferson on one count of obstruction of an official proceeding (Count One), one count of unlawful transfer of a false identification document (Count Two), and one count of aggravated identity theft (Count Three). (Jefferson II, ECF No. 1, at 1–6.) On June 4, 2014, Jefferson pled guilty to Counts Two and Three of the

---

[2] Specifically, prior to the filing of the December 9, 2013 Criminal Information, Jefferson was arrested by state authorities in April 2013 for similar conduct and on June 11, 2013, Jefferson and counsel met with an IRS agent who informed Jefferson that he was also under federal investigation. (*See* Jefferson I, Sept. 9, 2013 Tr. 70–71.) Both prior to and after learning that he was under federal investigation, Jefferson made numerous suspicious monetary transfers and cash withdrawals. (*See* Jefferson I, Sept. 9, 2013 Tr. 81–84, 104–17.) Further, after the June 11, 2013 meeting and before the December 19, 2013 Plea Agreement, Jefferson created a false driver's license in October 2013 and chartered a plane to England that was set to depart on November 2, 2013. (*See* Jefferson I, Sept. 9, 2013 Tr. 118–21.)

3

Indictment, and the Government dismissed Count One. ("June 4, 2014 Plea Agreement"). (Jefferson II, ECF No. 15, at ¶¶ 1, 8.) However, under the June 4, 2014 Plea Agreement, Jefferson agreed that he "understands that the United States will argue at sentencing for an upward departure or variance based on the defendant's criminal conduct that formed the basis for the government's allegations referenced in, and relevant conduct associated with, Count One of the indictment." (*Id.* at ¶ 4.)

### C. Jefferson's Sentencing

The Court consolidated Jefferson's two criminal cases for purposes of sentencing. *See Jefferson*, 621 F. App'x at 759. The Court imposed an upward variance and sentenced Jefferson to a total of twenty years of imprisonment. *See id.* Specifically, Jefferson received an active ten-year-sentence in Jefferson I (ECF No. 79, at 2), and an active ten-year-sentence in Jefferson II (ECF No. 36, at 2), for a total of twenty years of imprisonment. (Jefferson I, ECF No. 79, at 2; Jefferson II, ECF No. 36, at 2.) On appeal, the United States Court of Appeals of the Fourth Circuit affirmed Jefferson's sentences. *Jefferson*, 612 F. App'x at 679.

### D. Jefferson's § 2255 Motions

In his § 2255 Motions, Jefferson argues that he received the ineffective assistance of counsel. (§ 2255 Mot. 4.)[3] Specifically, the Court construes Jefferson to allege:[4]

Claim One:  Jefferson received the ineffective assistance of counsel when:
(a) Counsel "fail[ed] to advise Mr. Jefferson of his obligation to prioritize satisfying restitution above any

---

[3] The Court employs the pagination assigned to Jefferson's submissions by the CM/ECF docketing system. Unless otherwise indicated, all CM/ECF citations are to Jefferson II.

[4] The Court notes that in his § 2255 Motions, Jefferson only listed one lengthy claim for relief. (*See* Jefferson I, ECF No.114, at 4; Jefferson II, ECF No. 48, at 4.) However, based on further argument in his Memorandum in Support of the § 2255 Motions, the Court construes Jefferson to raise one claim of ineffective assistance of counsel with three subparts. (*See* Mem. Supp. § 2255 Mot. 19.)

4

discretionary expenditures ...." (Mem. Supp. § 2255 Mot. 19);

(b) Counsel "active[ly] and tacit[ly] approv[ed] of Mr. Jefferson's expenditures." (*Id.*); and,

(c) Counsel "fail[ed] to communicate the United States' expectations under the plea to Mr. Jefferson, and Mr. Jefferson's limitations (relevant to the plea) to the United States." (*Id.*)

In support of his § 2255 Motions, Jefferson has submitted his own Declaration. ("Jefferson Decl.," ECF No. 52.) Included with its Response, the Government has attached: (1) a Declaration from Jefferson's counsel, Charles James, Jr. ("James Decl.," ECF No. 59-1, at 1–8); (2) an Affidavit from Jefferson's counsel, John Martin ("Martin Aff.," ECF No. 59-2, at 1–5); and, (2) various exhibits detailing correspondence between Jefferson and counsel, and other legal documents (ECF Nos. 59-1, at 10–28; 59-2, at 6–72).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

5

### A. Claim One (a): Counsel's Alleged Failure to Advise Jefferson to Prioritize Restitution Above Any Discretionary Expenditures

In Claim One (a), Jefferson avers that he received the ineffective assistance of counsel when "[c]ounsel fail[ed] to advise Mr. Jefferson of his obligation to prioritize satisfying restitution above any discretionary expenditures" (Mem. Supp. § 2255 Mot. 20), and that because of counsel's performance, he lost the benefits of the December 19, 2013 Plea Agreement and received a sentence above the Government's original recommendation of 78 months. (*Id.* at 24–25.) Specifically, Jefferson asserts that,

> Prior to [Jefferson's second arrest in] February of 2014, Mr. Jefferson's counsel failed to advise him concerning his obligation to prioritize satisfying restitution above any discretionary expenditures.[] Counsel who negotiated the plea on Mr. Jefferson's behalf were well aware that the United States considered restitution a critical component of that agreement . . . . Contrary to their duties arising from this knowledge, during the period prior to the December 2013 plea hearing, counsel repeatedly advised Mr. Jefferson that there were no restrictions on his use of his assets, including his liquid assets, and that he could use them as he needed.

(*Id.* at 20–21; *See* Jefferson Decl. ¶¶ 17–18.) Jefferson further asserts that during plea negotiations, counsel indicated that paying restitution was "not a big deal." (Mem. Supp. § 2255 Mot. 21 (internal quotation marks omitted); Jefferson Decl. ¶ 7.) In response, the Government argues that counsel's assistance was not ineffective. (Resp. 11.) The Government contends that, as the record clearly establishes, "counsel were actually working diligently to help [Jefferson] meet his restitution obligation. It was [Jefferson] and [Jefferson] alone, who decided not to take that obligation seriously." (*Id.*)

The record refutes Jefferson's assertions that counsel failed to advise him of the need to prioritize restitution payments prior to his plea hearing in December 2013 and his second arrest in February 2014. The record demonstrates that counsel repeatedly conveyed to Jefferson the importance of meeting his restitution obligations. For example, leading up to the entry of

6

Jefferson's December 19, 2013 Plea Agreement, counsel negotiated with the Government to ensure that Jefferson would remain free prior to sentencing for the very purpose of liquidating his assets in order to make restitution payments. (*See* Martin Aff. ¶ 6; James Decl. ¶ 4; ECF No. 59-1, at 10, 19.) Further, counsel have submitted as exhibits, copies of correspondence with Jefferson wherein they discuss his obligation and the importance of preserving assets for restitution payments. (*See* ECF No. 59-1, at 10-25; ECF No. 59-2, at 6-24.) In an e-mail dated October 31, 2013, counsel explicitly requested that Jefferson make a plan to liquidate his properties to satisfy his restitution order and that Jefferson "[p]lease make this a priority." (ECF No. 59-1, at 10.) In a memorandum dated January 8, 2014, counsel explained the necessary "[g]ood faith efforts at restitution" that Jefferson must make. (ECF No. 59-2, at 17 (emphasis omitted).) Specifically, counsel stated,

> Judge Gibney was initially inclined to confine you [] at the plea hearing and only granted you pre-sentencing release in order to facilitate an orderly liquidation of assets so that you could meet your restitution obligations. . . . It is essential that you maintain the positive impression you have already made by working hard to liquidate your assets, making progress payments, and taking concrete action[] steps which can be pointed out to the Court. Judge Gibney's attitude is that the victims come first, and convincing him and the prosecutors that you are doing everything in your power to pay them back is critical. Moreover, while you should do everything possible to make the full payment in advance of sentencing, to the extent you need more time, the only hope of getting that time is by building a clear record of good faith progress. . . .

(*Id.* at 17-18.) The record therefore establishes that Jefferson was advised by counsel of the importance of prioritizing his restitution payments prior to both his plea hearing in December 2013 and his second arrest in February 2014, and thus, counsel was not deficient.[5]

---

[5] In his Reply, Jefferson complains that counsel's submitted correspondence is not self-authenticating. (Reply 3.) Jefferson is correct that copies of e-mail conversations and other private correspondence are not *per se* self-authenticating evidence. *See United States v. Shah*, 125 F. Supp. 3d 570, 574-76 (E.D.N.C. 2015). Nonetheless, under Federal Rule of Evidence 901, "[t]o satisfy the requirement of authenticating an item of evidence . . . the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

Nonetheless, Jefferson alleges that, "at odds with counsel's awareness of the importance of satisfying the restitution amount under the plea agreement was [counsel's] advice to Mr. Jefferson . . . that satisfying the restitution amount . . . would not be a considered mitigating factor at his sentencing." (Mem. Supp. § 2255 Mot. 21.) For the reasons explained below, Jefferson fails to demonstrate that counsel's advice was deficient, and that he was prejudiced by counsel's actions.

Jefferson's Sentencing Guidelines prohibited downward departures for "unexceptional efforts" to make restitution if such restitution is required by law. *United States Sentencing Manual* § 5K2.0(d)(5) (U.S. Sentencing Comm'n 2013). "Thus, restitution, although taken into account in the guideline permitting a reduction for acceptance of responsibility, can provide a basis for a departure when present to such an exceptional degree that it cannot be characterized as typical or 'usual.'" *United States v. Hairston*, 96 F.3d 102, 108 (4th Cir. 1996) (citations omitted). The United States Court of Appeals for the Fourth Circuit has clarified that "[s]ince the Guidelines consider restitution a form of 'acceptance of responsibility,' extraordinary restitution should provide a ground for departure when it indicates an extraordinary acceptance of responsibility." *Id.* at 109 (citations omitted).

Under the June 4, 2014 Plea Agreement, Jefferson agreed that he understood "that the United States w[ould] argue at sentencing for an upward departure or variance based on the defendant's criminal conduct that formed the basis for the government's allegations referenced

---

Fed. R. Evid. 901(a). The Rule then goes on to list several ways in which a proponent may authenticate evidence, including by "[t]estimony of a witness with knowledge" *id.* at 901(b)(1), and by "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Id.* at 901(b)(4). Here, counsel are witnesses with knowledge of the correspondence because they authored or received the prompted correspondence, *see Shah*, 125 F. Supp. 3d at 577, and they have submitted affidavits identifying the contents of the correspondence and tying them to the present. Therefore, the Court finds that counsel's submissions are sufficiently authenticated.

in, and relevant conduct associated with, Count One of the indictment." (ECF No. 15, at ¶ 4.) Count One of the Indictment in Jefferson II charged Jefferson with obstruction of an official proceeding and detailed that, "[b]eginning in or about July 2013 and continuing through on or about February 18, 2014, within the Eastern District of Virginia and elsewhere, [Jefferson] attempted to and did corruptly obstruct, influence, and impede an official proceeding, to wit: the sentencing and restitution hearing in" Jefferson I. (ECF No. 1, at ¶ 5.) Prior to Jefferson's sentencing date, the Court denied Jefferson's request that he still be awarded credit for acceptance of responsibility and granted an obstruction of justice upward variance from the Sentencing Guidelines because the Court found that Jefferson had failed to abide by the Court's reporting requirement and because Jefferson had intentionally dwindled his assets, created a false identification, and charted a flight to England while the Government was investigating his case. (*See* Jefferson I, Sept. 9, 2014 Tr. 386–90.) Therefore, to the extent that counsel warned Jefferson that his restitution efforts would likely fall short of "exceptional" to qualify for a downward departure of the Sentencing Guidelines, counsel's advice was correct. Jefferson had been indicted for obstruction of justice and had agreed in the June 4, 2014 Plea Agreement that the Government would base its argument for an upward variance on this charge. Clearly, Jefferson's efforts at restitution were not exceptional. *See Hairston*, 96 F.3d at 109; *United States Sentencing Guidelines Manual* § 3E1.1 cmt. n.4 (U.S. Sentencing Comm'n 2013) ("Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.").

Moreover, Jefferson fails to demonstrate any resulting prejudice from counsel's actions. Jefferson argues that, but for counsel's alleged inadequate advice regarding restitution payments,

"the December 19, 2013 plea agreement would have stood without amendment or alteration." (Mem. Supp. § 2255 Mot. 21.) Jefferson is incorrect. The record makes clear that the December 19, 2013 Plea Agreement was supplemented and that Jefferson was indicted on additional federal charges because of Jefferson's conduct predating the December 9, 2013 Criminal Information and continuing throughout his pre-sentencing release, and not because of counsel's alleged inadequate advice. Jefferson's total twenty-year sentence was not even a consequence of his *failure* to make restitution payments. Rather, Jefferson was denied acceptance of responsibility and the Court imposed an upward variance from the Sentencing Guidelines because the Government learned that during the course of its investigation of his case, Jefferson withdrew hundreds of thousands of dollars in cash and transferred millions of dollars to individuals and corporate entities (*see* Jefferson I, Sept. 9, 2014 Tr. 387, ECF No. 87), created a false driver's license, and charted a plane to Europe. (*See* Jefferson I, Sept. 9, 2014 Tr. 120, 386.) Further still, even after the Court imposed the reporting requirement, Jefferson spent his time on presentence release transferring millions of dollars in violation of the Court's order, beginning on the very day he pled guilty. (*See* Jefferson I, Sept. 9, 2014 Tr. 388–89.) Clearly, any additional warnings from counsel about the importance of his restitution would not have prevented Jefferson from engaging in such conduct. Indeed, Jefferson's Indictment in Jefferson II charging him with unlawful transfer of a false identification document and aggravated identity theft stemmed directly from conduct that predated the December 19, 2013 Plea Agreement. A criminal defendant cannot be prejudiced for consequences that have no causal link to counsel's legal advice, *see Strickland*, 466 U.S. at 694, and in Jefferson's case, he fails to demonstrate that his increased sentence in Jefferson I and Indictment in Jefferson II were the result of anything

10

other than his own poor choices. The record therefore establishes that counsel were not deficient in their performance.

For the reasons stated above, Jefferson fails to demonstrate that counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by counsel's advice. Accordingly, Claim One (a) will be DISMISSED.

### B. Claim One (b): Counsel's Alleged Active and Tacit Approval of Mr. Jefferson's Expenditures

In Claim One (b), Jefferson argues that counsel rendered ineffective assistance when they actively and tacitly approved of Mr. Jefferson's expenditures, thus causing him to lose the benefits of the December 19, 2013 Plea Agreement. (Mem. Supp. § 2255 Mot. 22, 24–27.) Specifically, Jefferson asserts, "[c]ounsel were well aware of Mr. Jefferson's lifestyle and spending habits.[] They actively and tacitly approved of that lifestyle, those spending habits, and many of the transactions which ultimately cost Mr. Jefferson the benefits of the December 19, 2013 Plea Agreement." (*Id.* at 22.) Jefferson claims that two examples illustrate his point: (1) that counsel advised Jefferson that he could use the proceeds of a sale of a home "as he pleased;" and, (2) that "upon learning Mr. Jefferson was treating his family to a[n] expensive vacation in Jackson Hole, Wyoming, counsel approvingly told him to enjoy himself." (*Id.* at 22–23.) Jefferson argues that this alleged "active and tacit approval" is the reason he lost the benefits of the December 19, 2013 Plea Agreement. (*Id.* at 22.)

Contrary to Jefferson's outlandish assertions, the record reflects that counsel advised him to be both prudent and transparent with his lifestyle choices, and Jefferson simply chose to ignore that advice. For example, prior to the December 19, 2013 Plea Agreement, counsel advised Jefferson that he was "not prohibited by the Court from using [his] money" in the sense that he could "buy gas, groceries and go Christmas shopping," but for "[a]nything other than

11

normal living expenses [Jefferson and counsel] should talk." (ECF No. 59-2, at 20; *see* Martin Aff. ¶ 9.) In another e-mail dated December 13, 2013, counsel prepared an agenda for an upcoming meeting with Jefferson wherein they planned to discuss with Jefferson his guilty plea and, among other things, his "[n]eed for contrition before [the] Court," his "[n]eed for a plan to liquidate assets to satisfy the restitution order and show good faith efforts from now thru sentencing," and his "[n]eed for candor with the government." (ECF No. 59-1, at 20.) Therefore, the record establishes no deficiency of counsel in their advice to Jefferson.

Moreover, for the same reasons as stated above, Jefferson fails to demonstrate any resulting prejudice from counsel's alleged inadequate advice. Jefferson's lifestyle, his use of the proceeds from the sale of a house, and his family's trip to Wyoming were not the reasons he lost the benefits of the December 19, 2013 Plea Agreement. As already explained, the Court denied Jefferson credit for acceptance of responsibility and applied an upward variance from the Sentencing Guidelines for obstruction of justice because Jefferson violated the conditions of the Court's reporting requirement, and because the Government discovered additional, pre-indictment criminal conduct. Further, although Jefferson now claims that the numerous and hefty money transfers and cash withdrawals that he made while on pre-sentence release were simply aspects of his regular "lifestyle," the Court rejected a similar argument prior to Jefferson's sentencing. (*See* Jefferson I, Sept. 9, 2014 Tr. 388–389.) Jefferson's failure to abide by the Court's reporting requirement and his additional criminal conduct are the reasons why he lost the benefits of the December 19, 2013 Plea Agreement and why he was indicted in Jefferson II. Thus, counsel cannot be faulted for Jefferson's Indictment in Jefferson II and the Supplemental Plea Agreement which withdrew the benefits of the December 19, 2013 Plea

Agreement.[6] Counsel was neither deficient in their performance nor did their actions prejudice Jefferson's defense. *See Strickland*, 466 U.S. at 691. Accordingly, Claim One (b) will be DISMISSED.

### C. Claim One (c): Counsel's Alleged Failure to Communicate the United States' Expectations under the Plea Agreement and Jefferson's Limitations with Respect to the Plea Agreement

In Claim One (c), Jefferson alleges that counsel

> did not communicate the United States' financial expectations under the plea agreement. Specifically, counsel failed to explain the United States' expectations concerning Mr. Jefferson's handling of his liquid assets.[] Counsel failed to warn Mr. Jefferson to preserve those liquid assets and to the contrary advised him to live his life as he had before his plea.[] Equally deficient were counsel['s] failures to communicate Mr. Jefferson's priorities and true financial position to the United States during plea negotiations. Much misunderstanding and the attendant loss of the benefits of the December 19, 2013 plea agreement would have been avoided had counsel conveyed Mr. Jefferson's need to satisfy his court-ordered obligations to his ex-wife and children, and the true impact of the prosecution on the value of the real estate assets involved.

(Mem. Supp. § 2255 Mot. 23–24.)

Jefferson's contentions defy belief. *See United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations and quotations omitted) (observing that "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted . . . colloquy are always

---

[6] In his Reply, Jefferson also claims that the Government has failed to demonstrate that Jefferson's criminal conduct was "undertaken without counsel's awareness and approval—while Mr. Jefferson has set forth under penalty of perjury in his declaration that some were undertaken at the advice of counsel, while others with the approval of counsel." (Reply 15.) To the extent that Jefferson claims counsel advised him to commit criminal acts, his assertion defies belief. The record demonstrates that counsel were unaware of Jefferson's pre-sentencing criminal conduct and that counsel approached Jefferson with their concerns that he was not being forthcoming with them about his actions and assets. (*See* ECF No. 59-1, at 24–25.) Moreover, counsel warned Jefferson that he had previously "advised [Jefferson] that if [he] ever asked [counsel] to do something illegal, immoral or unethical that [counsel would] refuse and withdraw before [counsel] allowed [himself] to join [Jefferson] in prison." (*Id.* at 28.)

13

palpably incredible and patently frivolous or false"). First, the December 19, 2013 Plea Agreement explicitly stated the amount of mandatory restitution that Jefferson agreed to and outlined the Government's financial expectations with respect to restitution.[7] (Jefferson I, ECF No. 10.) Moreover, as detailed herein, the record rebuffs Jefferson's assertion that counsel "failed to warn Mr. Jefferson to preserve [his] liquid assets and to the contrary advised him to live his life as he had before his plea." (Mem. Supp. § 2255 Mot. 23.) To the extent that Jefferson complains of the financial impact that his criminal conduct had on the value of his real estate holdings, the Court attributes any such loss in value solely to Jefferson's criminal activities rather than his attorneys' legal counsel.

Finally, as explained extensively above, Jefferson lost the benefits of the December 19, 2013 Plea Agreement because he failed to abide by the Court's reporting requirement and was indicted on additional federal charges stemming from his pre-indictment conduct, not because counsel somehow misled him or the United States about Jefferson's restitution obligations and limitations. Counsel's alleged inadequate advice had no bearing on Jefferson's ten-year sentence that he received in Jefferson II, and as explained to Jefferson at his pre-sentencing hearing, it was Jefferson alone who "thumb[ed] his nose at the victims" by withdrawing substantial amounts of cash and transferring money while on pre-sentencing release. (Jefferson I, Sept. 9, 2014 Tr. 389.) The record conclusively establishes that throughout their representation of Jefferson, counsel advised Jefferson to reserve his assets for his restitution obligations, but that Jefferson did not heed their warnings. Jefferson simply fails to carry his burden that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by counsel's performance. Claim One (c) will be DISMISSED.

---

[7] Although Jefferson's restitution was subsequently reduced, the Court does not discern how a reduction in the amount owed would alter Jefferson's understanding of his obligation to make restitution payments.

## III. CONCLUSION

For the foregoing reasons, Jefferson's § 2255 Motion will be DENIED. The action is DISMISSED. A certificate of appealability will be DENIED.[8]

An appropriate Order will accompany this Memorandum Opinion.

/s/ _____
John A. Gibney, Jr.
United States District Judge

Date: 7/16/18
Richmond, Virginia

---

[8] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Jefferson has not satisfied this standard.